JOHN JONES AND WIFE *v.* ALFRED THOMPSON.

**Resulting Trusts.**
> Since the passage of the Act of July 1, 1852, it devolves upon a party asking the aid of a court of equity to enforce a resulting trust to show, by appropriate averments, that it is not within the operation of the general provisions contained in § 20, but belongs to one or the other of the classes excepted in § 22, otherwise the relief cannot be granted.

**Pleading.**
> Averments in a pleading to enforce a resulting trust are insufficient when they amount to no more than that the defendant purchased the real estate for plaintiff and took conveyance to himself, which may be true and not result in a trust.

**Conveyance to Defraud Creditors.**
> A contract fully executed, founded in a fraudulent purpose to cheat creditors, is valid against those who, as volunteers, claim under one of the parties to the fraud.

**APPEAL FROM BOYD CIRCUIT COURT.**

May 9, 1876.

OPINION BY JUDGE COFER:

The facts of this case are so far similar to the facts in *Graves v. Graves,* 3 Met. 167, as to make that case decisive of this. In that case the appellant, who was the mother of appellee, brought suit to compel the appellee to convey to her land which she alleged he bought for her, as her agent, and paid for with her money, but the title to which had been made to him.

This court commenting on the petition in that case said: "The petition fails to charge that the appellee violated any trust confided to him in procuring the deed thus to be made, or that the deed was so made without the consent or directions of the appellant. For aught that appears to the contrary, the deed may have been made to him with her consent, and by her authority and express direction."

The first question, then, that arises is, could the chancellor, upon the state of fact presented by the petition, have compelled a conveyance, even though the existence of such facts had not been controverted by answer? We think not.

And then, after stating what the law of resulting trusts was before the adoption of the Revised Statutes, and quoting Secs. 20 and 22 of Chap. 80, the court went on as follows: "In all cases, therefore, arising as this did, since July 1, 1852, it devolves upon a party asking the aid of a court of equity to enforce a resulting trust to show, by appropriate averments, that it is not within the operation of the general provision contained in Sec. 20, but belongs to one or the other of the classes excepted in Sec. 22; otherwise the relief cannot be granted."

There are no averments in the pleadings in this case to take it out of the general provisions of Sec. 20. The most liberal construction which can be given to the answer and counterclaim cannot bring it within the rule just cited. All that can be found in that pleading amounts to no more than an averment that the appellee purchased the lots for his father and took the conveyances to himself. It is not alleged that this was done in violation of confidence reposed in the appellee, or that the deeds were so made without the consent of Jackson Thompson, and as was said in the case *supra,* "For aught that appears the deeds may have been made to him with Jackson Thompson's consent, and by his authority and express direction."

The allegation that the appellee received the conveyances in trust for his father, is but the averment of a legal conclusion. The facts showing that there was a trust should have been stated, and that not having been done, the averment of the conclusion adds nothing whatever to the strength of the pleading. We are, therefore, of the opinion that if all the facts alleged had been admitted or proved, the chancellor could not have done otherwise than dismiss the counterclaim, so far as it was based upon a supposed trust.

The supposed agreement of the appellee to convey the lot sued for to Mrs. Jones is not even referred to in the pleadings, and if it had been fully established by the evidence it could avail nothing in the state of the pleadings. And the same is true of the other ground of defense urged in argument, viz.: that the deeds were made to the appellee to shield the property from the creditors of his father. Nor could that fact, if alleged and proved, be of any avail whatever. The contract is fully executed, and if founded in the alleged fraudulent purpose to cheat creditors, it is valid against those who, as volunteers, claim under one of the parties to the fraud. In *Bookover v.*

*Hurst,* 1 Met. 665, this court held that a mortgagor "cannot prevent the legal operation of the deed by showing it was fraudulently executed by him. This is neither a valid, legal nor equitable defense."

It was said in *Graves v. Graves* (and the same doctrine was fully recognized in *Martin v. Martin, et al.,* 5 Bush 47), that when the money of one person is used to pay for land which is conveyed to another, under such circumstances there is no enforceable trust, the party whose money has been so used for the benefit of another may recover it; and upon the facts in that case the appellant would have been entitled under her prayer for general relief to a judgment for the money, but for other matters which were held to amount to an estoppel to claim it. So in this case, if Jackson Thompson, instead of Jones and wife, had pleaded the facts pleaded by them, he could have recovered whatever money, belonging to him, the evidence shows was used in paying for the lots. But the right of action to recover the money is in his personal representative, and not in his heirs.

We are, therefore, of the opinion that the appellants failed to show a right to relief of any kind to any extent, and the judgment is *affirmed.*

*Elliott & Prichard and A. J. James, for appellants.*
*Ireland & Hampton and A. L. Moore, for appellee.*